[Civ. No. 2856.  Third Appellate District.—January 16, 1925.]

H. C. KOFOID, Respondent, v. O. L. BECKNER et al., Appellants.

[1] NEGLIGENCE — INSTRUCTION DIRECTING VERDICT—ESSENTIAL ELEMENTS.—An instruction directing a verdict for a party in the event the jury finds certain facts to be true must embrace all the elements necessary to show legal liability and to warrant the directions or conclusion contained in the instruction in relation to the verdict.

[2] ID.—CONTRIBUTORY NEGLIGENCE—PLEADING—EVIDENCE — ERRONEOUS INSTRUCTION.—In an action for damages for personal injuries sustained by plaintiff as the result of his having been struck by defendant's automobile, contributory negligence is a matter of defense and, as a pleading, must be specifically set forth by the defendant, and where contributory negligence is pleaded in the

2. See 19 Cal. Jur. 765.

defendant's answer, and supported by substantial evidence, or if the testimony of plaintiff shows contributory negligence, an instruction directing a verdict in favor of plaintiff if certain facts are found to be true, but which omits any reference to the element of contributory negligence, is erroneous.

[3] ID.—SEPARATE STATEMENT OF NEW MATTER—INSUFFICIENT PLEADING—INSTRUCTIONS.—In such an action, the defense of contributory negligence constitutes new matter which must be separately stated in a plea by itself; and the words, "and by way of further and separate defense, allege that the injury and collision in said complaint described, if any there was, was solely and proximately caused by the fault and negligence of the plaintiff, himself, and without any fault on the part of said defendant," when coupled with a paragraph denying negligence on the part of defendant, do not constitute a sufficient pleading of the defense of contributory negligence, so as to entitle defendant to an instruction predicated thereon.

[4] ID.—CONTRIBUTORY NEGLIGENCE—PLAINTIFF'S EVIDENCE—INSTRUCTIONS.—The rule that the defendant is not entitled to an instruction predicated upon the defense of contributory negligence where such defense is not sufficiently and properly pleaded has no application when contributory negligence is shown by the plaintiff's evidence; but in this action for damages for personal injuries sustained by plaintiff as the result of his having been struck by defendant's automobile, the evidence introduced on behalf of plaintiff did not contain any substantial testimony upon which the jury could base a finding of contributory negligence.

[5] ID.—RECKLESS DRIVERS—RIGHTS OF PEDESTRIANS—DUTY TO DRIVE ON RIGHT-HAND SIDE.—Notwithstanding the fact that the number of reckless drivers have rendered the paved portion of our highways a danger zone, pedestrians have a right to the use thereof, and are chargeable only with such ordinary and reasonable care for their own safety as a prudent person would ordinarily exercise, and they are not bound to assume that drivers of cars will act otherwise than in a careful and prudent manner; and while the law does not require an automobile driver to, at all times, drive on what to him is the right-hand side of the paved portion of the highway, when the opposite portion of the highway is

---

3.  See 19 Cal. Jur. 682.

5.  Reciprocal duty of operator of automobile and pedestrian to use care, notes, 1 L. R. A. (N. S.) 215; 4 L. R. A. (N. S.) 1130; 20 L. R. A. (N. S.) 232; 24 L. R. A. (N. S.) 557; 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

Right or duty of operator of automobile to violate rule of the road to avoid traveler or obstacle, note, 24 A. L. R. 1304 et seq. See, also, 3 Cal. Jur. 879.

obstructed it does become his duty to propel his car along his right-hand half of the pavement, and at such a rate of speed as not to endanger the life or property of others.

[6] ID.—CONTRIBUTORY NEGLIGENCE — PLEADING—EVIDENCE—INSTRUC-TIONS.—In this action for damages for personal injuries sustained by plaintiff as the result of his having been struck by defendant's automobile when he (plaintiff) was walking northerly along the left-hand side of the paved portion of a public highway, contributory negligence as a defense not having been presented by defendant's answer, and the evidence introduced on behalf of plaintiff not having contained any substantial testimony showing that plaintiff was guilty of contributory negligence, but, on the contrary, the evidence having shown that the injury to plaintiff was occasioned solely and exclusively by the improper and reckless driving on the part of defendant, the trial court did not err in giving an instruction directing a verdict for plaintiff in the event the jury found certain facts to be true, but omitting any reference to the element of contributory negligence; and the giving of other instructions in relation to contributory negligence was in nowise prejudicial to the rights of defendant.

(1) 38 **Cyc.**, p. 1634, n. 13. (2) 4 **C. J.**, p. 919, n. 43; 29 **Cyc.**, p. 581, n. 1, p. 652, n. 11. (3) 29 **Cyc.**, p. 582, n. 8, 15. (4) 28 **Cyc.**, p. 49, n. 49; 29 **Cyc.**, p. 652, n. 11. (5) 29 **C. J.**, p. 657, n. 45, p. 658, n. 48, 58; 28 **Cyc.**, p. 28, n. 26 New, 32, p. 29, n. 40. (6) 4 **C. J.**, p. 919, n. 43; 28 **Cyc.**, p. 47, n. 20, p. 49, n. 49; 38 **Cyc.**, p. 1634, n. 15.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Croop and Jos. T. O'Connor for Appellants.

Johnston & Jones and Hugh K. Landram for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendants in the court below in an action prosecuted by him for and on account of personal injuries sustained in being run down by an automobile belonging to the defendants, and driven by one of the defendants at the time of the injury. From this judgment the defendants appeal. The incident resulting in the injury of the plaintiff occurred on the state highway a short distance south of Athlone, in the county of Merced, at about 7:30 P. M., February 19, 1922. Prior to the accident rain had fallen and the paved portion of the highway was more or less

slippery. At the time of the occurrence no rain was falling, but the evening was misty, and vision through windshields of automobiles appears to have been somewhat obscured. The highway at the place where the injury was received is a straightaway for a number of miles to the south. Just prior to the circumstances giving rise to this action it appears two automobiles, one a Dodge car and the other a Hupmobile, had gotten off the highway and were stuck in the mud. These cars were headed toward the south. A Cadillac car had stopped, or rather had returned to the place of the accident, to assist in extricating the Hupmobile and Dodge cars from the mud and back on to the paved portion of the highway. The plaintiff and three other persons came along at this juncture, asked if they could be of any assistance, were told that they could, and thereupon drove their car southward on the highway a distance of seventy-five or one hundred yards, and parked it alongside the paved portion of the highway. All four of the automobiles just mentioned were headed southward and the headlights of all the cars were lighted. It appears that the Hupmobile was in the ditch on one side of the road and the Dodge car was off the highway on the opposite side of the road. The plaintiff and his companions assisted in getting the Hupmobile car back on the highway, and this car was driven southward to a position a short distance in the rear of the Dodge car, in which the plaintiff and his companions had been riding, and there parked alongside the highway and its headlights left burning. Thereupon the plaintiff and his companions walked back to where the Cadillac car had been standing on the west side of the highway for the purpose of assisting in pulling the Dodge car, before mentioned, back on to the highway. As the plaintiff and his companions were walking back to the Cadillac car they occupied the westerly portion of the pavement and were passed by two cars going northward. These cars slowed down somewhat. One of them slowed down so that it passed by but little faster than one would ordinarily walk. After these cars had passed by and the plaintiff and his companions had reached a point, variously estimated at from eight to twelve feet south of the Cadillac car, the defendants' car approached, traveling at a speed variously estimated at from twenty-five to thirty miles an

hour.   The defendant, who was driving the car, testified that he was running at about twenty-five miles an hour. No sound or warning of the approach of the defendants' car appears to have been given.   The defendants' car had not slowed down before it reached a point some thirty or forty feet from where the injury upon the plaintiff was inflicted.   The defendants' car had passed the Dodge car in which the plaintiff and his party had ridden, and, also, the Hupmobile, which we have mentioned, parked alongside of the roadway, but the defendants appear not to have noticed whether they were actually standing still or moving slowly.   The lights of the other cars, which we have mentioned, were also observed by the defendants, but it does not appear that they sensed any trouble on the highway, as the momentum of their car was not lessened until after they reached the point before stated.   At about this instant of time the plaintiff became aware of the approach of the defendants' car by observing the lights, and glancing sideways saw that the car was approaching toward him, and moved a short distance westward on the highway, but was not able to escape the approaching car and was run down and injured.   Whether the plaintiff was standing or actually moving at the instant of time before he observed the approach of the defendants' car is not exactly clear, but the weight of the testimony would indicate that he had stopped walking and then moved again in an effort to get off the highway, when he observed that the defendants' car was headed toward him.   At the time the plaintiff was run down he was a few feet west of the center line of the highway.   It appears also from the testimony that if the defendants' car had remained on the right-hand side of the highway, where it would ordinarily be entitled to move on its course northward, there was sufficient clear space to pass without injuring anyone. Two cars had just passed by, as we have before stated, but these cars, apparently observing conditions, slackened speed.   When the defendants' car reached the point, which we have noted, some thirty or forty feet from the plaintiff, it would appear that the driver threw on the brakes, or, at least, did something, which caused his car to skid and head directly toward the plaintiff and his companions. In these movements of the car the plaintiff and one other person were knocked down and injured.

The appellants in this case concede the negligence of the defendants, and it could not very well do otherwise in view of the testimony of one of the defendants who was driving the car that, after observing the lights, as we have before stated, he did not slow down, but kept running along on a wet pavement at the rate of twenty-five miles an hour. The following question and answer show the disregard of conditions manifested by the driver of the defendants' car: "Q. So, then, just trusting to blind luck and without knowing whether they were moving or not, you just kept going along at twenty-five miles an hour, even after you found out the Dodge car was standing still? A. Yes."

Admitting the negligence on the part of the defendants and the negligence of the driver of the car which fixes such responsibility, the appellants contend that the injuries received by the plaintiff were due to his own contributory negligence, and that the court, in one of its instructions, erroneously took from the jury the question of contributory negligence on the part of the plaintiff. In a number of instructions the court did state to the jury that if the injuries received by the plaintiff were due to his own negligence, and, also, that if the plaintiff was equally negligent with the defendants and, also, if the plaintiff was not acting with due regard to his own welfare and exercising ordinary care, etc., then, and in that case, the plaintiff could not recover; also, that a pedestrian must make reasonable use of his senses of sight and hearing, must give heed to ordinary indications of danger, and must not walk blindly into danger, unless he expects to stand the consequences, and that he should look and listen and observe if vehicles are approaching. The instruction complained of is as follows: "The defendants were bound to use ordinary care in operating their automobile along the public highway, to avoid collision with other persons or vehicles, and if you find from the evidence that they failed to use such ordinary care, and that the accident was the proximate result of the failure of the defendants to use such ordinary care, your verdict must be for the plaintiff."

[1] The rule is well settled in this state that an instruction directing a verdict for a party in the event the

jury finds certain facts to be true must embrace all the elements necessary to show legal liability and to warrant the directions or conclusion contained in the instruction in relation to the verdict. **[2]** Measured by this rule, if contributory negligence on the part of the plaintiff was pleaded in the defendants' answer, and supported by any substantial testimony, or, if the testimony of the plaintiff showed contributory negligence, then, and in that case, the instruction before referred to was clearly erroneous. But, if the question of contributory negligence was not properly before the jury, then, and in that case, the instruction is correct, and the fact that the court elsewhere and afterward, in its instructions, did give to the jury the law relating to contributory negligence, and instructed them that if they believed the plaintiff to be negligent, or equally negligent, or that his negligence contributed to the injury, the plaintiff could not recover, though inconsistent with the instruction which we have just set out, were against the plaintiff, and, therefore, not prejudicial to the rights of the defendants. Contributory negligence is a matter of defense and, as a pleading, must be specially set forth by the defendant. **[3]** In the answer filed by the defendants, it appears that coupled with a paragraph denying negligence on the part of the defendants, there are these words, "and by way of further and separate defense, allege that the injury and collision in said complaint described, if any there was, was solely and proximately caused by the fault and negligence of the plaintiff, himself, and without any fault on the part of said defendant, or either of them." The rule in pleading new matter is clearly stated by Pomeroy in his work on Code Remedies, section 690, page 756, to wit: "It is elementary that a defense of new matter should be pleaded: and as new matter must of necessity be a distinct defense from a denial, it follows that it cannot properly be associated or mingled up with denials general or special in one paragraph or plea. For the same reason, such defense of new matter must necessarily be complete and single, as much so as each cause of action, and should be separately stated in a plea by itself." *Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, 505 [143 Pac. 714], *Hughes* v. *Warman Steel etc. Co.*, 174 Cal. 556, 562

[163 Pac. 885], and a number of other cases might be cited, but these establish the rule in relation to pleading contributory negligence.

[4] In answer to this rule that the pleadings do not properly tender the issue of contributory negligence on the part of the plaintiff, the appellants reply that the rule has no application when contributory negligence is shown by the plaintiff's evidence. (*Cahill* v. *E. B. & A. L. Stone Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84]; *Kenny* v. *Kennedy,* 9 Cal. App. 350 [99 Pac. 384].) This rule, also, seems to be well established. Basing their contention upon this rule, the appellants insist that the plaintiff's own testimony shows contributory negligence and, therefore, that the instruction, which we have quoted, constitutes prejudicial error. With this contention we do not agree. The testimony upon which the appellants base their contention of contributory negligence is as follows: "Mr. Jones: Q. How far down the pavement was the Beckner (defendants') car, within the best of your judgment, when you noticed it coming? A. Perhaps thirty feet. Q. Could you give any judgment as to its speed? A. It was coming very rapidly towards me. . . . Q. I will ask you, then, to just state how it appeared to you, when you were standing there, when the Beckner car came, from the time that you first saw it until it struck you? A. Well, when I first saw it, it was coming right in the center of the highway and considering myself safe, then I started for the running-board of the Cadillac and the Beckner car veered a little towards the west, that is, turned a little bit towards the west side of the highway; it seemed to take right after me; I made up my mind I had better get off the highway and I was getting off the highway, when it caught me with the front end of the car. . . . Q. And what was your position with reference to the center of the paved portion of the highway? A. I was west of the center. Q. Could you state how far west of the center, Mr. Kofoid? A. No, sir, I cannot say, past a few feet, maybe only a foot or two. Q. You cannot say you were more than one foot or two to the west of the center of the paved portion of the highway? A. My best judgment is, perhaps I was more than that though, perhaps three or four feet west of the center. . . . Q. That car (viz., the last car that passed by before defendants' car) was very close to you then before

you saw it? A. Yes, sir; well, I would say it was, it may have been forty or fifty feet probably. Q. You were walking then in a northerly direction towards the Cadillac? A. Yes, sir. Q. Did you turn around or did you just glance out from the side? A. No, sir, the rays of light as they came on me, I noticed it coming. Q. Then, you did not turn around at all? A. No, sir, I don't believe I did. Q. You did not at all look in a southerly direction down the highway at that time, to see if there were any other cars approaching from a distance? A. I might have, but I do not remember. Q. You do not remember of having done so? A. No, sir, I do not remember. Q. Then, after this Ford car had passed, you continued to your position which you finally took, namely, six or eight feet in front of the Cadillac car? A. Yes, I had reached about that point when I was struck; I had not come to any stop that I know of; I don't know, we were just going back there to do this work; I don't think we had come to any standing position. Q. You think you were still in a position of walking towards the Cadillac? A. I think we were, yes. . . . Q. Now, about how far was the Beckner car, that is the defendants' car from you at the time you first saw it? A. I don't know the distance; what I would give you, would be an approximation, I should say something like thirty or forty feet. . . . Q. Do you know what attracted your attention to the car? A. No, sir, I do not, unless it was the light. Q. You don't remember of having heard anybody say 'a car is coming' or anything of that kind? A. No, sir, I did not hear anyone say that. Q. Then, your impression is now, that the first thing that attracted your attention to the Beckner car, was the approaching light? A. I think so. Q. And what was the first thing you did, Mr. Kofoid? A. My first thing was to make a move towards the Cadillac car; you see I could not get out of the way, that way, I started to get off the pavement on the west side in the mud, but he got me before I got off. Q. Did you turn around as the Beckner car approached? A. I turned, yes, I turned sideways to watch it. Q. You turned sideways. A. Yes, sir. Q. And started to move in which direction? A. I first started or tried to move, but did not move very far; I started towards the Cadillac car. I saw him coming right towards me and I started to run off the pavement, but he

was so close and he got me before I could get out of the way of the car.''

The cases relied upon by appellants in relation to contributory negligence being shown by the testimony of the plaintiff so as to make it an issue in the case irrespective of the pleadings, in stating the rule, are particular to mention the fact that there must be some substantial testimony, upon which the jury can base a finding of contributory negligence. In other words, whether presented by the pleadings, or by the testimony introduced by the plaintiff, there must be some substantial testimony showing contributory negligence, before the court would be justified in holding that the instruction complained of by the appellants was either inapplicable to the instant case or constituted prejudicial error. If these elements are both wanting, the instruction is correct under the circumstances of this case. The testimony of the plaintiff, which we have set forth, is not changed or altered in any respect, or modified by the testimony of other witnesses other than, as we have stated, that the weight of the testimony would lead to the conclusion that the plaintiff had stopped walking an instant or so before he was struck down, but the testimony all shows the facts just as we have stated, and that the plaintiff was in a position where, if the defendants' car had been guided along the highway where it should have been driven, no injury would have resulted to the plaintiff. At the time of the injury, the testimony of the plaintiff and of all of his witnesses shows that he was on the westerly half of the paved portion of the highway, that the course the defendants' car should have followed was along the easterly portion of the highway, and that cars had immediately passed along that portion of the highway without injury to anyone. The testimony leads irresistibly to the conclusion that the defendants' car was being driven at an excessive rate of speed under the circumstances, upon a slippery highway, that the presence of the lights of four automobiles standing still was not heeded, the speed of the oncoming car was not slackened until within immediate proximity of where the plaintiff and his companions were, and then, either by an improper application of the brakes or ''a loss of his head,'' as one of the witnesses testified the driver stated, the defendants' car was deflected in its course over and upon the westerly half of

the highway, and the plaintiff and one of his companions run down. [5] Notwithstanding the fact that the number of reckless drivers have rendered the paved portion of our highways a danger zone, pedestrians have a right to the use thereof, and are chargeable only with such ordinary and reasonable care for their own safety as a prudent person would ordinarily exercise, and they are not bound to assume that drivers of cars will act otherwise than in a careful and prudent manner, and while the law does not require an automobile driver to, at all times, drive on what to him is the right side of the paved portion of the highway, when the opposite portion of the paved highway is obstructed, it does become his duty to propel his car along his right-hand half of the pavement, and at such a rate of speed as not to endanger the life or property of others. [6] There seems to us no question that the conditions which we have recited in this case and the testimony which we have set forth show that the injury to the plaintiff was occasioned solely and exclusively by the improper and reckless driving on the part of the driver of the car occupied and being driven by the defendants, and, therefore, that the instruction complained of by the appellants was correct and that the inconsistent instructions, in relation to contributory negligence, afterward given by the court, were in nowise prejudicial to the rights of the defendants.

The order and judgment of the trial court are hereby affirmed.

Hart, J., and Finch, P. J., concurred.