[Civ. No. 3257. Third Appellate District.—July 1, 1927.]

R. A. HOFFMAN, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

338

340

Levinsky & Jones for Appellants.

Ostrander & Ostrander for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment and the verdict of a jury awarding plaintiff $16,175 damages for personal injuries sustained in a railroad crossing accident. Appellants seek a reversal of the judgment on practically all of the statutory grounds, but rely chiefly upon the refusal of the trial court to charge the jury with respect to the doctrine of contributory negligence.

The injuries complained of were the result of a collision between a Buick automobile driven by plaintiff and the passenger train of defendant, Southern Pacific Company, at

a railroad crossing five miles northerly from Merced, which accident occurred about 7:30 o'clock on the morning of January 5, 1924. The Oakdale branch of the Southern Pacific Railway runs from Merced to Stockton through an open and flat country. From Merced northerly to and beyond the crossing where the accident occurred the Cox Ferry highway extends parallel with and adjacent to the railroad right of way. Upon this highway and about one mile southerly from the point of the accident toward Merced the plaintiff had lived for about a year and was perfectly familiar with the crossing in question, with the entire surroundings, and in a general way was familiar with the train schedule on that branch of the railroad. He knew that the morning train was due to leave Merced for Stockton and would reach the crossing in question about 7 or 7:30 o'clock every morning. At the point where the accident occurred a roadway crossed this Cox Ferry highway and the railroad track at right angles. There was a slight elevation from the Cox Ferry road to and across the railroad track. This crossing was open, and the view was entirely unobstructed by buildings, trees, or other obstacles both up and down the track as far as one could see, except for a dense fog that prevailed that morning. The train was due to leave Merced at 7 o'clock A. M., was twenty-five minutes late, and because of the heavy fog, it was running with the headlight turned on. There was the usual sharp conflict of evidence as to whether the warning whistle of the engine was blown or the bell rung upon approaching the crossing. The witnesses differ materially as to the distance at which the approaching train could be seen through the fog. This distance varied from one hundred feet to two hundred yards. There is no substantial evidence to the effect that the train was running at an unusually high rate of speed. All witnesses agree that a heavy fog prevailed and that the headlight was turned on.

Plaintiff was engaged in drilling a well westerly of the railroad track at a point in the vicinity of the crossing where the accident occurred. About 7:20 or 7:30 o'clock in the morning, in company with his associate, E. B. Hawkins, the plaintiff drove his open Buick car from his home at the rate of twenty-five or thirty miles an hour along this Cox Ferry highway within fifty or sixty feet of the railroad

track. The train was approaching from his rear, but he neither heard it nor saw it, nor did he look for it. He admits that he never thought of it nor paid any attention to it. Plaintiff operated the car, and Hawkins sat upon his right in the front seat. When they reached the crossroad leading at right angles over the railroad track plaintiff claims that he slowed down his machine and turned abruptly to his left to cross the track. Neither of the occupants of the automobile had seen or heard the approaching train. When the machine was within five or six feet of the nearest rail they discovered the train about a hundred feet distant bearing down upon them. Both saw it about the same instant. Plaintiff then slipped his clutch into the intermediate gear and without stopping attempted to cross the track ahead of the approaching train. The left hind wheel of his machine was struck by the engine, and the occupants of the automobile were hurled from the vehicle, which was completely demolished. Hawkins was practically unhurt, but the plaintiff sustained serious injuries. His right hand was lacerated, his body was severely bruised, and a triangular fracture of the frontal bone of the skull occurred, which penetrated to the brain and exposed the cerebrum. He was taken to the hospital, where his wounds were treated, and the fractured skull was trephined. In the course of a number of months his recovery appeared to have been practically complete.

With respect to the manner in which plaintiff approached and attempted to cross the railroad track, the following evidence is pertinent in determining whether the trial court was warranted in refusing defendants' instructions on the question of contributory negligence. E. B. Hawkins, who was called in behalf of the plaintiff, testified in part as follows: "Q. . . . Where was the front of your machine . . . at the time you first saw the train? A. Well, when he turned to go on the road, turning in to his left here, to approach the railroad, I looked down behind him, I looked right that way down the railroad and we must have seen the train just at that same instant. . . . I say, I must have been five feet from the track, from the front wheel, as near as I could guess at it. . . . Q. You were very close to the rail? A. Yes, sir. Q. Practically on the rail? A. Yes, that is what I thought at the time. Q. How far would you

judge . . . the train was away from you? A. Well, . . . I think somewhere in the neighborhood of a hundred feet. Q. Was the headlight burning? A. Yes, sir. . . . Q. But he shifted from high into second? A. Certainly. Q. At about what time did he do that? A. Well, just as he seen the train, he just turned to me and he said 'look there' and just as he said that, he shifted his machine down that way into second." On cross-examination Mr. Hawkins testified that they drove down that Cox Ferry road about twenty-five or thirty miles an hour, but slowed down as they turned to their left on to the crossing. He testified that he did not know exactly when the train came by there, but he did know that it "came along there a little after seven." Then he testified: "When I first looked . . . his machine was turning in the crossing, I was looking down the track like that . . . behind Mr. Hoffman. I never turned my head, I was still looking that way when I seen the train. Just as I seen it, he seen it at the same instant. . . . I have seen the train go by there many times, assuredly I have. . . . I never heard any sound until I seen the train. . . . I was not thinking anything about the train." During their ride to the crossing Mr. Hoffman had not mentioned the train to Hawkins. There were no buildings, fences, or trees to obscure the view.

The plaintiff testified that they drove down the Cox Ferry road about twenty-five or thirty miles an hour; that there was about as heavy a fog that morning as they had had that winter. He said that they made the turn on to the crossing road about ten or twelve miles an hour, and he further testified as follows: "Q. As you came along the road, approaching that crossing from your house, were you looking, or expecting the approach of any train? A. I never looked back at all, I was looking straight ahead. . . . Q. You say you did not turn around and look back? A. No, sir, I did not. . . . I was driving an open car, with a one-man top . . . no curtains were on the car. . . . As soon as I turned the corner, I looked for the train, to see if any train was coming from toward Merced. . . . I could see no train. . . . I could hear no noise of an approaching train. . . . Q. Did you see any train before the accident? A. I heard it and saw it about the same time. I saw the headlight first. . . . It was about eighty or a hundred feet

distant. . . . I was almost on the track when I first saw the train . . . about five feet away, I should say. . . . As soon as I saw the train I shifted on the second, if I had stepped on the gas, on high, I would have killed my engine . . . so I shifted into intermediate.''

The witness Violet Gray, called for defendants, testified that she looked out from her window that morning and saw the train through the fog and observed the Hawkins automobile going down the Cox Ferry road "about two lengths of a car ahead of the train.''

From the foregoing it may be fairly inferred that the plaintiff, knowing that it was about time for the morning train from Merced on its way to Stockton, drove his open Buick automobile down the Cox Ferry highway a distance of over half a mile parallel with and adjacent to the railroad track through a dense fog, which obscured the view for a distance beyond a hundred feet, running his machine at from twenty-five to thirty miles per hour; that upon reaching the crossing he slowed down materially, turning to his left some fifty or sixty feet directly on to the railroad crossing without attempting to stop his machine; that when he reached a point about five or six feet from the nearest rail he discovered the train about a hundred feet away with its headlight turned on and bearing down upon him; that he then shifted his clutch into the intermediate gear and attempted to cross ahead of the engine. The plaintiff admitted that he did not turn around or look back for the train, as he drove down the highway by the side of the railroad track. His associate, Hawkins, said that he never turned around and was not thinking about the train on their ride to the crossing. The train was not mentioned by either of them until it was discovered by both of them about the same time when they were within five or six feet of the rail. It must be said that this furnishes substantial evidence of a lack of ordinary care in approaching a railroad crossing which under appropriate pleadings, or even in the absence of a plea of contributory negligence, would require proper instructions to be given to the jury with relation to the application of that doctrine.

After specifically denying plaintiff's charges of negligence contained in the complaint the defendants, "further answering said complaint, as and for a further, separate and

distinct defense to the alleged cause of action therein set forth," plead: "That the accident referred to in said complaint was caused solely and wholly by, and was the proximate result of the carelessness, recklessness and negligence of said plaintiff in this: that said plaintiff at the time and place set forth in the complaint, prior to, and at the time of said accident, did not exercise due, or any care, and was negligent, careless and reckless in this, that although said plaintiff well knew that he was about to cross a railroad crossing, over which crossing many trains pass in both directions at all hours of the day and night, said plaintiff drove his automobile up to, upon and over said railroad crossing without stopping, or looking, or listening for any approaching train; nor did he take warning from the stationary warning sign at said crossing, but notwithstanding all of the aforesaid, said plaintiff negligently, carelessly and recklessly drove up to, on and upon said crossing."

From the record it appears that this cause was tried upon the theory that contributory negligence was a proper issue in the case. In the course of the examination of Carrie A. Wall, a juror, on her *voir dire* the following occurred. Mr. Ostrander, examining the jury in behalf of the plaintiff, asked: "Q. Mrs. Wall, are you familiar with what is known as the plea of contributory negligence? A. No. Q. Well, that means where one person is charged with injuring another by reason of his negligence, he replies to this effect: 'Well, I was guilty of negligence, but the other party was guilty of negligence too that contributed to the injury,' that is what is meant by contributory negligence. It is the confession of negligence on the part of the person charged with negligence, but for the purpose of the pleading, it confesses negligence but alleges contributory negligence; in other words, where both are negligent, neither can recover.

"Mr. Levinsky: I object to the question, and move the court that it be stricken out; it is a statement and not a question.

"Mr. Ostrander: Here is an attempt to plead contributory negligence, because it is a further and separate and distinct defense. Now we have the right to assume from this they are going to plead contributory negligence. Now if they don't plead contributory negligence, if that is so

understood, then there is no purpose in my asking these questions at all, if it is so understood.

"Mr. Levinsky: There is no understanding at all; I don't have to announce anything other than from the pleadings.

"The Court: Well, the statement is made in the presence of the jury, so that is all right, we may as well go on.

"Mr. Levinsky: The pleadings speak for themselves.

"Mr. Ostrander: Does the jury understand you have stated you don't plead contributory negligence?

"Mr. Levinsky: I say the pleadings stand for themselves.

"Mr. Ostrander: Q. Now, assuming that the defense of contributory negligence is made in this case, and the court should instruct you that the burden is upon the defendant to prove that fact, you would be guided by that instruction, would you not? A. Yes, sir."

■ Where a case is tried by the respective parties on the theory that the pleadings present an issue of contributory negligence and where no objection has been made to the form of the pleading and there is substantial evidence to support this issue, it becomes the duty of the trial court to give to the jury such appropriate instructions on this subject as have been offered by the defendant (14 R. C. L. 785, sec. 50; *Kelly* v. *Santa Barbara R. R. Co.,* 171 Cal. 415 [Ann. Cas. 1917C, 67, 153 Pac. 903]; *Schuh* v. *Herron Co.,* 177 Cal. 13 [169 Pac. 682]; *Busch* v. *Los Angeles Ry. Co.,* 178 Cal. 536 [2 A. L. R. 1607, 174 Pac. 665]; *Perry* v. *Angelus Hospital Assn.,* 172 Cal. 311 [156 Pac. 449]; *Kofoid* v. *Beckner,* 70 Cal. App. 624 [234 Pac. 113]).

■ As a general rule the contributory negligence of the plaintiff must be specially pleaded by the defendant in order that he may rely upon this defense (19 Cal. Jur. 681, sec. 104). But where plaintiff's contributory negligence appears from the allegations of his complaint or from the evidence introduced in his behalf, this plea is available to the defense although it is not pleaded in the answer (19 Cal. Jur., p. 681, sec. 104, p. 697, sec. 119; 20 R. C. L. 182, sec. 151; 20 Standard Ency. of Proc. 317; *Green* v. *Southern Pacific Co.,* 132 Cal. 254 [64 Pac. 255]; *Kenny* v. *Kennedy,* 9 Cal. App. 350 [99 Pac. 384]).

■ Where neither the allegations of the plaintiff's complaint nor the testimony adduced in his behalf show that the plaintiff is guilty of negligence which directly con-

tributes to the injuries which he sustains, the defendant may not avail himself of the plea of contributory negligence in the absence of a special defense setting up the facts upon which he relies. It has been a perplexing question upon which the courts have differed widely as to just what allegations would be sufficient to constitute an adequate defense upon a plea of contributory negligence. It is apparent that no fixed rule in this regard can be assigned which will fit all classes of cases; each case will depend upon the particular facts involved. It is not necessary to use the specific term of contributory negligence, although a concise statement of the facts indicating the commission or omission of acts which would be required of one under similar circumstances in the exercise of ordinary care and which would appear to directly contribute to the injuries complained of must be alleged. It is not sufficient to merely allege in the form of a conclusion that the acts complained of were due to the negligence or carelessness of the plaintiff (20 R. C. L. 183, sec. 152; 29 Cyc. 582; 5 Elliott on Railroads, 813, sec. 2805). In the case of *Crabbe* v. *Mammoth Channel G. M. Co.,* 168 Cal. 500 [143 Pac. 714], it is said: "Contributory negligence in this state is an affirmative defense which must be pleaded. While the pleader may charge the contributory negligence in general terms, yet he must plead the facts of such negligence, and the facts pleaded must show a causal connection with the injury. *Smith* v. *Buttner,* 90 Cal. 95 [27 Pac. 29]; *Stephenson* v. *Southern Pacific Ry. Co.,* 102 Cal. 143 [34 Pac. 618, 36 Pac. 407]."

 Among the authorities in California and in some other states the careless use of a familiar term has occasionally led to the inaccurate statement that the doctrine of contributory negligence is a plea of confession and avoidance. This has led to much confusion, and a common impression exists that however innocent the defendant may believe himself to be, before he may accuse the plaintiff of negligence which caused his injuries, the defendant must first confess negligence on his own part. Upon a careful examination of every case in California involving this doctrine which has been called to our attention we are convinced not only that this is an erroneous statement of the law, but that similar language used in each and every one of these cases is mere *dicta*, either because in each instance the form

of pleading declared a mere conclusion or because the case was really decided upon some other issue, this objectionable language was unnecessary to the determination of the appeals in question. This error may have been aided because of the rule which prevails to the effect that where there is no negligence shown on the part of the defendant he is, for that reason alone, free from liability (19 Cal. Jur. 647, sec. 76).

But under the statute of California and in nearly all code states the defendant may set forth in his answer as many defenses as he may have, so long as they are separately stated (Code Civ. Proc., sec. 441). And these separate defenses may also be absolutely inconsistent (*American Nat. Bank* v. *Donnellan*, 170 Cal. 9 [Ann. Cas. 1917C, 744, 148 Pac. 188]; *Shepherd-Teague Co.* v. *Hermann*, 12 Cal. App. 394 [107 Pac. 622]; *Calexico Lumber Co.* v. *Emerson*, 54 Cal. App. 239 [201 Pac. 612]). It is quite apparent that to hold that a defendant must first confess his own negligence before he will be permitted to charge the plaintiff with contributory negligence is in direct conflict with the clear declaration of the legislature and the uniform decisions of our courts with respect to the right to set up various conflicting defenses. Moreover, that doctrine would appear to be a denial of justice and would often preclude one from making a meritorious defense to a charge of actionable negligence. Can it be said that before a defendant who is charged with negligence and who conscientiously believes himself to be innocent of that charge, but who is also possessed of facts which lead him to believe that the injuries of which the plaintiff complains were sustained as a direct result of his own lack of ordinary care, must first stultify himself by verifying his answer and swearing that he is guilty of negligence, believing in his own heart that that statement is false, before he will be permitted to set up a valid defense of contributory negligence? Surely this cannot be the law.

In 29 Cyc., page 582, the rule is thus stated: "A general denial and plea of contributory negligence do not constitute inconsistent defenses and may be pleaded together, and negligence on the part of the defendant is not admitted by a plea of contributory negligence following a general denial." Similarly the text found in 6 Current Law, at page 768, is stated as follows: "While a denial of negligence and an

allegation of contributory negligence are verbally inconsistent, they are not so in practice, and a defendant need not elect between the two defenses; nor does the plea of contributory negligence, when properly pleaded, admit the negligence as charged in the petition.'' So, also, in 1 Thompson on Negligence, second edition, 375, section 390, it is said: ''In Louisiana it is held that a plea of contributory negligence admits an issue of negligence on the defendant's part. But if this means that the plea of contributory negligence is in the nature of a plea of confession and avoidance, admitting the negligence of the defendant and avoiding it by showing that the plaintiff was also negligent, then it is unsound and incorrect, unless in a special application to rules of pleading peculiar to particular states. The pleading of contributory negligence as a special defense is not inconsistent with a denial of the negligence of the defendant. . . . Hence the defendant cannot be required to elect between two separate paragraphs of his answer, one of which denies any negligence on his part, while the other sets up contributory negligence on the part of the plaintiff. A defendant may then both traverse the complaint and plead contributory negligence; but as the defenses are distinct and different, they should be set out in separate paragraphs of his answer.''

It is interesting to note that upon a rehearing of the Louisiana case above cited by the author of Thompson on Negligence as an authority for the statement that contributory negligence is a plea of confession and avoidance that court in *Bomar* v. *Louisville N. R. R. Co.*, 42 La. Ann. 1206 [9 South. 244], says: ''We have not held, and we are far from holding that the plea of contributory negligence by a defendant, sued for negligence, operates as an admission of the negligence charged. . . . The admission that there is an issue of negligence is very different from and indeed contrary to an admission of the negligence itself, which latter admission would eliminate and destroy the issue of negligence.''

In 5 Elliott on Railroads, third edition, 811, section 2805, the rule with respect to pleading contributory negligence is stated as follows: ''In jurisdictions where contributory negligence is regarded as an affirmative defense to be specially pleaded, it is generally held that the pleading should

state the facts upon which the conclusion of contributory negligence is predicated. It is not enough to merely state that the plaintiff or person killed or injured was guilty of negligence contributing to his injury, as that would be a conclusion of law. A plea is too general which merely charges that the injuries occurred from the plaintiff's own carelessness and negligence. In a jurisdiction in which the burden is upon the defendant it has been held that the defendant must plead contributory negligence if he relies on that defense, though the plaintiff alleges freedom from contributory negligence in the complaint. . . . The general denial and the plea of contributory negligence are not generally regarded as inconsistent. The authorities hold that a case may be tried upon either or both defenses. The allegation of contributory negligence is not considered an implied admission of negligence on the defendant's part so as to dispense with proof of such negligence by plaintiff (*McDonald* v. *Montgomery St. Ry. Co.*, 110 Ala. 161 [20 South. 317]; *Fowler, Son & Co.* v. *Brooks*, 65 Kan. 861 [70 Pac. 600]; *Charping* v. *Toxaway Mills*, 70 S. C. 470 [50 S. E. 186]; *Wright* v. *Southern Ry. Co.*, 155 N. C. 325 [71 S. E. 306]; *Weingarter* v. *Louisville & N. R. Co.*, 19 Ky. Law Rep. 1023 [42 S. W. 839]; *Wallace* v. *Portland Ry., L. & P. Co.*, 103 Or. 68 [204 Pac. 147]; *Day* v. *Kelly*, 50 Mont. 306 [146 Pac. 930])." The last two cases cited contain vigorous challenges to the mistaken doctrine that the defense of contributory negligence constitutes a plea of confession and avoidance or requires the admission of guilt on the part of the defendant before he may avail himself of the defense. The last case cited contains a list of authorities of considerable length, which decisions are opposed to this doctrine. In accordance with our view that the California cases in which it has been held that the defense of contributory negligence was inadequately pleaded are not out of harmony with the doctrine that the defense of contributory negligence is not a plea of confession and avoidance, the following brief statement of the essential facts determined is made. These cases do not refer to the doctrine of confession and avoidance, but merely hold that the pleadings were defective. *Meindersee* v. *Meyers*, 188 Cal. 498 [205 Pac. 1078], was a suit for damages for injuries sustained by plaintiff's wife in falling into an excavation left in the street. In

affirming the judgment for plaintiff the supreme court said: "No offer or attempt to plead it (contributory negligence) was made by appellant. . . . Consequently the appellant was not in a position to and apparently did not urge the point in the court below and certainly may not do so here." In the case of *Western States Co.* v. *Bayside L. Co.*, 182 Cal. 140 [187 Pac. 735], judgment for damages for the death of plaintiff's intestate was recovered. In affirming the judgment the court said: "The court instructed the jury that the contributory negligence, if any, of the deceased was not a defense in the action. This instruction was evidently based upon the fact that contributory negligence was not pleaded as a defense. The answer alleged that the injury was wholly the result of the negligence of the deceased, which amounts to nothing more than a denial of negligence on the part of the defendant." In *Hughes* v. *Warman Steel Casting Co.*, 174 Cal. 556 [163 Pac. 885], in affirming a judgment for plaintiff, in which the defendant had alleged as a special defense "that any injury sustained by plaintiff was the proximate result of his own negligence and carelessness, particularly in standing in front of the casting which he was trimming instead of standing at the side, where, defendant alleged, he was ordered to stand; and, second, that the plaintiff entered upon the work of cutting said nails with knowledge of the dangers, and hence assumed the risk incident to such work," the court said: "It is contended by defendant under its special defense interposed in that regard that the evidence shows that the injury to plaintiff was entirely caused by his own negligence. This, of course, is not a plea of contributory negligence on the part of plaintiff. Such a defense is an affirmative one, and must be pleaded. No attempt to plead it appears in this case." In *Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 277 [L. R. A. 1916E, 58, 156 Pac. 51], in reversing a judgment against defendant for negligence, the court said: "Plaintiff filed a memorandum . . . to the effect that appellant might not complain of the instructions upon contributory negligence because that defense was not affirmatively set up in the answer. The respondent is in error. The defense of contributory negligence was pleaded as 'a further, separate and distinct answer and defense,' and not merely in denial of the allegations of the complaint. The issue was tendered, we think,

sufficiently and in form." In *Kofoid* v. *Beckner*, 70 Cal. App. 624 [234 Pac. 113], affirming a judgment for plaintiff, this court said: "In the answer filed by the defendants, it appears that, coupled with a paragraph denying negligence on the part of the defendants, there are these words: 'and by way of further and separate defense, allege that the injury and collision in said complaint described, if any there was, was solely and proximately caused by the fault and negligence of the plaintiff, himself, and without any fault on the part of the defendants, or either of them'; . . . It is elementary that a defense of new matter should be pleaded, . . . such defense of new matter must necessarily be complete and single, as much so as each cause of action, and should be separately stated in a plea by itself." In *Dover* v. *Archambeault*, 57 Cal. App. 659 [208 Pac. 178], affirming a judgment for plaintiff, the court approved striking out from defendant's answer the following language: "And in that behalf this defendant avers that if the plaintiffs or either of them was injured at the time and place as stated in their complaint, that it was by and through the negligence of (plaintiff) who at said time and place negligently drove his said automobile on to the automobile of this defendant which was rightfully standing still in said highway, and not moving at all in any direction, at the time of said accident." The court added: "The language above quoted added nothing to that denial. . . . Where the defense is not pleaded, and where the facts in support of such defense have not been developed by the evidence presented by the plaintiff, it is not error for the court to ignore that defense in presenting the case to the jury." And in *Off* v. *Crump*, 40 Cal. App. 173 [180 Pac. 360], a judgment for plaintiff was affirmed, and the court says: "The only matter in the answer suggesting a defense of contributory negligence is that after controverting the allegations of the complaint charging negligence of defendant in driving his automobile, it is denied 'that the plaintiff was struck by said automobile from any cause other than his own negligence,' and it is alleged that, 'on the contrary, the collision with the plaintiff, and any injuries which the plaintiff may have received therefrom, were wholly and solely due to the negligence of the plaintiff.' " In that case the

trial court found that no negligence of the plaintiff contributed to or was the proximate cause of the accident.

It is quite clear that the foregoing cases were very properly decided upon the facts and pleadings presented, and that in every instance the attempt to set up contributory negligence on the part of the defendant failed because the allegations were mere conclusions. In none of these cases is it said that the defense failed because defendants did not first confess their own negligence.

In the following three cases the court did say in effect that contributory negligence was predicated upon the existence of negligence on the part of the defendant. But in these cases the language used in an effort to plead contributory negligence consisted also of mere inadequate conclusions, and the employment of the characterization of the defense of contributory negligence as a plea of confession and avoidance was unnecessary to the determination of the cases and was therefore *dicta*.

In *Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500 [143 Pac. 714], affirming a verdict for plaintiff, where the answer merely affirmatively declared that the death was "caused by his own gross negligence and failure to exercise and use ordinary care for his own protection," the court said: "Appellant's plea is therefore not a plea of contributory negligence, but consists of a denial of negligence upon the part of the pleader and an assertion of gross negligence upon the part of the deceased." In *Gett* v. *Pacific Gas & Elec. Co.*, 192 Cal. 621 [221 Pac. 376], affirming a verdict for plaintiff solely upon the sufficiency of the evidence to support the findings of the defendant's guilt of negligence and the plaintiff's freedom from negligence, the court *ex industria* used the term "confession and avoidance." But the question of the pleadings was not involved in that case, and the statement was clearly *dictum*. The judgment was properly affirmed and would be just as firmly established if this statement were eliminated from the opinion. Finally the case of *Bauman* v. *Edgar*, 72 Cal. App. 448 [236 Pac. 943], affirmed a judgment for plaintiff in an automobile collision case solely upon the evidence, wherein the court says: "The plea of the defendant that the plaintiff could have avoided the accident after he saw the danger is nothing more than a plea of contributory negligence on the part of

the plaintiff. This plea raises the question whether the facts are such as to constitute negligence in law, or whether the issue is one to be left to the court or jury on the evidence.'' The pleadings were therefore not questioned. In *Lemmermann* v. *Pope & Talbot,* 42 Cal. App. 192 [193 Pac. 467], the appeal was from a judgment of nonsuit, which was affirmed upon the specific ground ''that the facts disclosed by the evidence sustained the affirmative defense pleaded by defendant.'' The court said: ''The defense here pleaded is neither 'that plaintiff assumed the risk of his employment . . . nor is it a pleading of contributory negligence on the part of plaintiff, which assumes the negligence on the part of defendant, but is a charge that the accident was caused solely by plaintiff's negligence.'' In spite of the foregoing statement and regardless of defendant's effort to plead affirmatively contributory negligence, this case was affirmed upon the ground that the record presented no substantial evidence of negligence of the defendant, and therefore the statement with relation to the confession and avoidance rule was also *dicta.*

▇▇▇ Assuming from the foregoing that it is therefore unnecessary for a defendant to first confess the negligence with which he is charged before he may plead contributory negligence, we are of the opinion that the special defense in the instant case entitled the defendant to the benefit of that plea, for he particularly specified in a separate, affirmative cause of defense that knowing of the danger of the crossing in question the plaintiff negligently ''drove his automobile up to, upon and over said railroad crossing without stopping or looking or listening for any approaching train.'' We are of the opinion that this constitutes a good and sufficient statement of the special defense of contributory negligence.

▇▇▇ All instructions on the subject of contributory negligence were refused. At the conclusion of the evidence the defendants offered the following instructions among others, which correctly stated the law on the subject of contributory negligence, and which under the pleadings and the evidence should have been given to the jury and the refusal to give which constituted reversible error, to wit:

''Negligence constituting a cause of civil action consists in the omission by one to use that degree of care which it is his or her legal duty to use with respect to another to

protect such other from injury, by which omission, as the proximate cause thereof, such other, without contributory negligence on his or her part, sustains injury to his or her person or property.

"It is a well settled rule of law that if the negligence of plaintiff contributed proximately to the injury of which the plaintiff complains, he cannot recover. And if you so find from the evidence, then your verdict must be against the plaintiff and in favor of the defendants.

"Contributory negligence is the want of ordinary care and prudence on the part of the person injured contributing directly and proximately to the injury."

The following instruction offered by defendants also correctly stated the law, but was erroneously modified by the trial judge adding the last two lines which are here italicized and which addition affirmatively directed the jury that the principle there announced was not applicable to the law of the case and would not exempt the defendants from liability *unless the evidence indicated that they* (the defendants) *were not negligent.* This instruction read:

"The railroad track of a steam railway must itself be regarded as a signal of danger, and one intending to cross must avail himself of every reasonable opportunity to look and listen for approaching trains. If the view of the track is obstructed, he should take greater pains to listen. If taking these precautions he would have seen or heard the approaching train, the very fact of his injury will raise a presumption that he did not take the required precaution, *and in such circumstances if defendants were not negligent, plaintiff cannot recover.*"

Where a plaintiff is familiar with a crossing and has reason to expect the passing of a train momentarily and his view is greatly obstructed by a dense fog, he should use greater caution in approaching the track. Under such circumstances a person will not be absolved from negligence and may not recover damages for injuries sustained if he carelessly attempts to cross the track without the exercise of due caution and the use of his faculties to carefully look and listen for an approaching train (22 Cal. Jur., 318, sec. 68, p. 335, sec. 80, p. 42, sec. 84; *Heitman* v. *Pacific Elec. Ry. Co.,* 10 Cal. App. 397 [102 Pac. 15]). Where the view of the track is obscured by physical objects, dense fog, or

a cloud of dust, greater care should be used in attempting to cross the track (*Fleming* v. *Western Pac. Ry. Co.*, 49 Cal. 253; *Hager* v. *Southern Pacific Ry. Co.*, 98 Cal. 309 [33 Pac. 119]). In *Young* v. *Southern Pacific Ry. Co.*, 182 Cal. 378 [190 Pac. 40], it is said: "A traveler is bound to look and listen, and, if necessary, stop—and that obligation is increased rather than diminished by his knowledge that a train was approaching."

Where the view of a track is obscured by a dense fog, and a train is momentarily expected and on account of the noise created by the operation of his automobile one is prevented from listening for the approach of the train, it might amount to negligence if under such circumstances one failed to stop his vehicle so that he could listen to better advantage.

All these are questions which the jury had a right to consider under appropriate instructions upon the subject of contributory negligence.

In the supplement to Thompson on Negligence, page 56, sections 425 and 427, the rule is thus stated: "It is a restatement of a familiar principle to say that if there is any doubt as to whether the plaintiff was guilty of contributory negligence, the question is not one of law for the court but is one of fact for the jury. It is the province of the jury to determine the question whenever there may be reasonably a difference of opinion as to the inferences and conclusions from the fact. . . . It is always for the jury where the evidence is conflicting (29 Cyc. 631; *Kelly* v. *Santa Barbara R. R. Co.*, 171 Cal., at p. 423 [Ann. Cas. 1917C, 67, 153 Pac. 903])."

The exclusion of the following testimony was also error. During the examination of the witness Edward B. Hawkins, for the purpose of laying the foundation for impeachment of the witness the following proceedings were had: "Mr. Levinsky: Did you make this remark to them (Mrs. Gray and Mrs. Wyatt): 'I consider myself lucky, that train was going like hell, and so were we?' A. No, sir, I did not. Q. And nothing like that? A. Nothing like that."

Later in the reading of the deposition of this Mrs. Gray the following occurred: "Mr. Levinsky: Q. State whether or not at the scene of the accident you heard a conversation between Mr. Hawkins and some man who was taking the

number of the car in which that man said: 'The train was going pretty fast?' and Hawkins said: 'I will say it was going a good clip, and so were we?' A. That is what he said exactly. Q. Who said that? A. Mr. Hawkins, that is the only remark I ever heard him make.'' To this the court sustained plaintiff's objection on the ground that the conversation was with a different person. The time was fixed at the scene of the accident soon after it occurred, and the incident was referred to as the time when a man was taking down the number of the machine of plaintiff which had been demolished. Later over the objection of defendant the witness Hawkins was permitted to deny this statement in spite of the fact that the evidence of Mrs. Gray had been ruled out as follows: ''Mr. Ostrander: Q. Now, Mr. Hawkins, did you have a conversation with Mrs. Gray, or when Mrs. Gray was present, with a man who may have looked at the number of the automobile, at any time during that day . . . in which conversation you made a statement to this effect, that upon being asked by the man: 'Well, the train was going pretty fast, at a pretty good clip, wasn't it?' and you replied: 'I will say it was, and so were we.' A. I did not make that statement.''

It was apparently an issue in the trial of the case on the part of defendant as to whether plaintiff with his associate Hawkins did not drive down upon the crossing at a reckless rate of speed without stopping at the crossing. The witness Mrs. Gray had said in her deposition that Hawkins had stated to a stranger at the scene of the accident immediately after it occurred, who was then engaged in taking the number of the demolished machine: ''The train was going a pretty good clip, *and so were we.''*

This court is neither deciding nor inferring that the evidence disclosed by the record in this case conclusively establishes the fact that plaintiff was guilty of contributory negligence, but is merely holding that those facts furnish substantial evidence, which under the special defense pleaded and the evidence developed from plaintiff's witnesses should have been submitted to the jury for its consideration under appropriate instructions which were offered with relation to the subject of contributory negligence.

It is unnecessary to pass upon other grounds urged by defendants for reversal.

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 29, 1927.